# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

**ISMAEL SORIA,**

      Plaintiff,

v.

**CAROLYN W. COLVIN,**
Commissioner of Social
Security,[1]

      Defendant.

**No. 13-CV-4014-DEO**

**ORDER**

_____

This matter is before the Court pursuant to Ismael Soria's [hereinafter Mr. Soria] application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 et seq. The parties appeared for a hearing on August 21, 2013. During the hearing, the Court requested supplemental briefs, which the parties filed shortly thereafter. After considering the parties' arguments, the Court took the matter under advisement and now enters the following.

---

[1] Mr. Soria originally filed this case against Michael J. Astrue, Comm. of Social Security. On February 14, 2013, Carolyn W. Colvin became the Commissioner of SSA. The Court, therefore, substitutes Commissioner Colvin as the defendant in this action. Fed. R. Civ. P. 25(d)(1).

## I. FACTUAL BACKGROUND

Mr. Soria was born on December 21, 1974. He lives in Storm Lake, Iowa. At the time of the hearing, he was 37 years old. He has a fifth grade education and is a native Spanish speaker. (There was some testimony that Mr. Soria went to school intermittently in later grades, but did not complete them.) Mr. Soria cannot read English, and only speaks limited English. He is married and has four children.

Mr. Soria has a varied work history. His first jobs were doing basic farm labor. After that, he began working in packing houses and meat packing plants. He spent much of his adult life working at the Tyson meat packing plant in Storm Lake, Iowa. While working at Tyson, Mr. Soria hurt his back and that back injury is the basis for his present disability complaint. Mr. Soria first had back surgery in 2007. After returning to Tyson, he did light work but was eventually laid off. Since being laid off in 2009, Mr. Soria has made some attempts to learn English and find other work.

Mr. Soria claims disability based on back pain, high blood pressure and depression.

## II. PROCEDURAL HISTORY

Mr. Soria filed his application for disability benefits on October 14, 2009. Mr. Soria alleged he became disabled on September 28, 2009. At the time Mr. Soria became disabled, he was 34 years old. The Social Security Administration denied Mr. Soria's application on December 2, 2009, and upon reconsideration March 22, 2010. On August 16, 2011, Mr. Soria appeared for telephonic hearing before an Administrative Law Judge (ALJ). Because of issues related to the telephone based interpreter, the hearing was continued. On November 29, 2011, Mr. Soria appeared for an in person hearing in Sioux Falls, South Dakota. Administrative Law Judge (ALJ) Robert Maxwell heard Mr. Soria's claim and denied it on December 12, 2011. Mr. Soria appealed to the Appeals Council, who denied his claim on December 5, 2012. Mr. Soria filed the present Complaint on February 7, 2013.

The ALJ set out the issue presently before the Court:

> The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result

> in death or that has lasted or can be
> expected to last for a continuous period of
> not less than 12 months. There is an
> additional issue whether the insured status
> requirements of sections 216(i) and 223 of
> the Social Security Act are met. The
> claimant's earnings record shows that the
> claimant has acquired sufficient quarters
> of coverage to remain insured through
> December 31, 2014. Thus, the claimant must
> establish disability on or before that date
> in order to be entitled to a period of
> disability and disability insurance
> benefits.

Docket No. 5, Tr. 10.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits. 20 C.F.R. § 404.1520. The five successive steps are: (1) determination of whether a plaintiff is engaged in "substantial gainful activity," (2) determination of whether a plaintiff has a "severe medically determinable physical or medical impairment" that lasts for at least 12 months, (3) determination of whether a plaintiff's impairment or combination of impairments meets or medically equals the criteria of a listed impairment, (4) determination of whether a plaintiff's Residual Functional Capacity (RFC) indicates an incapacity to perform the

4

requirements of their past relevant work, and (5) determination of whether, given a plaintiff's RFC, age, education and work experience, a plaintiff can "make an adjustment to other work." 20 C.F.R. § 404.1520(4)(i-v).

At step one, if a plaintiff is engaged in "substantial gainful activity" within the claimed period of disability, there is no disability during that time. 20 C.F.R. § 404.1520(a)(4)(I). At step 2, if a plaintiff does not have a "severe medically determinable physical or mental impairment" that lasts at least 12 months, there is no disability. 20 C.F.R. § 404.1520(a)(4)(ii). At step 3, if a plaintiff's impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and last at least 12 months, a plaintiff is deemed disabled. 20 C.F.R. § 404.1520(e). Before proceeding to step 4 and 5, the ALJ must determine a plaintiff's Residual Functional Capacity [RFC]. RFC is the "most" a person "can still do" despite their limitations. 20 C.F.R. § 404.1545(a)(1). The RFC an ALJ assigns a plaintiff has been referred to as the "most important issue in a disability case . . . ." Malloy v. Astrue, 604 F. Supp. 2d 1247, 1250 (S.D.

Iowa 2009) (citing <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc)). When determining RFC, the ALJ must consider all of the relevant evidence and all of the Plaintiff's impairments, even those which are not deemed severe, as well as limitations which result from symptoms, such as pain. 20 C.F.R. § 404.1545(a)(2) and (3). An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports." <u>Strongson v. Barnhart</u>, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no disability. 20 C.F.R. § 404.1520(a)(4)(iv). At step 5, if, given a plaintiff's RFC, age, education, and work experience, a plaintiff can make an adjustment to other work, there is no disability. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). This step requires the ALJ to provide "evidence" that a plaintiff could perform "other work [that] exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2). In other words, at step 5, the burden of proof shifts from a plaintiff to the Commissioner of the S.S.A.. <u>Basinger v. Heckler</u>, 725 F.2d 1166, 1168 (8th

Cir. 1984).  The ALJ generally calls a Vocational Expert (VE) to aid in determining whether this burden can be met.

In this case, the ALJ applied the appropriate methodology and found that Mr. Soria had not engaged in substantial gainful employment since September 28, 2009.  The ALJ stated that Mr. Soria suffers from the degenerative disc disease and status post lumbar fusion.[2]  However, the ALJ found that Mr. Soria did not suffer from a disability as contemplated by the Social Security Code.  Specifically, the ALJ stated:

> [t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).  There are no medical opinions within the record that conclude that any of the claimant's impairments, alone or in combination, medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Moreover, the undersigned concludes that the evidence of record does

---

[2]  The ALJ also noted several other impairments, including affective disorder, hypertension, and high cholesterol. However, the ALJ determined that they were non-severe. Regarding the affective disorder (depression), the ALJ considered Mr. Soria's mental status, including a GAF score of 32, using the standard four functional areas set out in disability regulations (paragraph B criteria) and determined that his mental impairment was non-severe.  See Docket No. 5, Tr. 12-14.

not support a conclusion that any of the
claimant's impairments, alone or in
combination, meets one of the listed
impairments in 20 CFR Part 404, Subpart P,
Appendix 1. The claimant carries the
burden to establish that his or her
impairment satisfies the requirements of a
listed impairment (Johnson v. Barnhart, 390
F.3d 1067, 1070 (8th Cir. 2004)). However,
the undersigned has examined all of the
impairments listed in 20 CFR Part 404,
Subpart P, Appendix 1, and specifically
considered Listing 1.04, and concludes that
the record does not support that the
criteria of this listing are satisfied.

The claimant's back impairment does not
meet Listing 1.04 because there is no
indication that the impairment has resulted
in compromise of a nerve root or spinal
cord with either: evidence of nerve root
compression, characterized by
neuro-anatomic distribution of pain,
limitation of motion of the spine, motor
loss accompanied by sensory or reflex loss,
and positive straight leg raising test
(sitting and supine); spinal arachnoiditis;
or lumbar spinal stenosis resulting in
pseudoclaudication manifested by chronic
nonradicular pain and weakness and
resulting in inability to ambulate
effectively. Specifically, the claimant's
nerve root compression has not resulted in
neuroanatomic distribution of pain (Exhibit
4F). It has resulted in limitation of
motion of the spine (Exhibit 7F, p. 3), but
there has been no sensory or reflex loss.
Similarly, there is no indication or
allegation that the claimant has spinal

> arachnoidits or has developed
> pseudoclaudication. Thus, Listing 1.04 is
> not met.[3]

Docket No. 5, Tr. 14.

The ALJ went on to consider residual functional capacity and concluded:

> [a]fter careful consideration of the entire
> record, the undersigned finds that the
> claimant has the residual functional
> capacity to perform less than the full
> range of light work as defined in 20 CFR
> 404.1567(b). Specifically, the claimant
> can lift and/or carry 20 pounds
> occasionally and 10 pounds frequently;
> stand/walk for about 6 hours in an 8-hour
> day with normal breaks and sit for about 6
> hours in an 8-hour day with normal breaks.
> He could occasionally balance, stoop,
> kneel, crouch, crawl, and climb
> stairs/ramps, but never climb
> ladders/ropes/scaffolds.

Docket No. 5, Tr. 14. The ALJ than considered the plaintiff's credibility under the Polaski standard and stated:

> [t]he claimant reported that due to his
> back impairment, he has significant pain in
> his legs and back. He also reports that he
> experiences dizziness and seeing "stars" or
> "lights," possibly as a consequence of his
> pain medication. He states he can walk for
> 5 minutes and has only limited ability to
> perform all other exertional and postural
> activities. He alleges the need to change

---

[3]  Pseudoclaudication simply means pain or cramps.

9

> positions frequently. After careful
> consideration of the evidence, the
> undersigned finds that the claimant's
> medically determinable impairments could
> reasonably be expected to cause the alleged
> symptoms; however, the claimant's
> statements concerning the intensity,
> persistence and limiting effects of these
> symptoms are not credible to the extent
> they are inconsistent with the above
> residual functional capacity assessment.

Docket No. 5, Tr. 15.

The ALJ found significant Mr. Soria's medical history, stating:

> [t]he objective medical evidence is one
> factor that the undersigned has considered.
> The claimant is diagnosed with degenerative
> disc disease and is status post a lumbar
> fusion performed in July 2007, two years
> prior to the alleged onset date (Exhibit
> 1F). Since the alleged onset date,
> physical examination has indicated limited
> forward flexion, positive straight leg
> raise, spinal tenderness, and muscle spasms
> (Exhibit 16F, p. 1; 15F, p. 2-3; 4F, p. 3;
> 7F, p.3). However, these exams have also
> consistently revealed intact sensation,
> normal strength, and normal reflexes.
> Furthermore, x-rays have consistently shown
> a solid, intact fusion (Exhibit 4F). The
> claimant's treating neurosurgeon, Jonathan
> Fuller, M.D., has stated that the objective
> findings do not explain the claimant's
> symptomatic complaints (Exhibit 4F).

Docket No. 5, Tr. 15. The ALJ considered Mr. Soria's

treatment notes and stated:

> [o]verall, this treatment history is not
> consistent with the claimant's allegations.
> The claimant did not follow through with
> physical therapy, and his medication and
> other treatment have been changed only
> slightly, which suggests stability and
> control over his pain. In addition, the
> sheer number of presentations is
> inconsistent with the claimant's
> allegations. Fewer than ten presentations
> related to pain are reflected in the
> medical evidence of record during the
> period of alleged disability. Moreover,
> there are no presentations to the emergency
> room or similar facility for acute pain
> episodes. The claimant's willingness to
> explore physical therapy and his suspected
> symptom exaggeration further detract from
> his credibility.

Docket No. 5, Tr. 16. The ALJ considered Mr. Soria's

testimony that he did little house work because of his back

pain. The ALJ did not find Mr. Soria's testimony persuasive,

stating:

> [t]he inconsistencies in the record raise
> concerns with the claimant's credibility.
> As just discussed, the claimant's
> activities of daily living are both
> internally inconsistent and inconsistent
> with the medical evidence of record. Also
> inconsistent are the claimant's statements
> regarding his grasp of English. At the
> hearing, he alleged no ability to speak or
> understand English, written or orally. The
> record does, in fact, reflect many

> instances of translator use at medical
> appointments and the like. However, the
> claimant alleged ability to speak and
> understand English at his initial interview
> (Exhibit 2E). Moreover, the claims
> representative noted no problems
> communicating with the claimant (Exhibit
> 1E). Another inconsistency exists
> regarding the claimant's education. The
> claimant reported at the hearing that he
> had only six years of education, but he
> alleged at the time of his application that
> he attended school through ninth grade
> (testimony). These inconsistencies carry
> only the slightest weight; however, they do
> raise some level of concern that the
> claimant is attempting to appear more
> disabled and less capable for purposes of
> this application.

Docket No. 5, Tr. 17. The ALJ discounted Mr. Soria's work history because he received unemployment benefits. The ALJ also discounted the testimony of Mr. Soria's wife and the other third party statements.

Finally, the ALJ concluded that Mr. Soria is capable of returning to past relevant work.

> [t]he claimant is capable of performing
> past relevant work as an inspector. This
> work does not require the performance of
> work-related activities precluded by the
> claimant's residual functional capacity (20
> CFR 404.1565)... Past relevant work is
> work that (1) an individual performed
> within the past 15 years; (2) that was
> substantial gainful activity; and (3) that
> lasted long enough for the individual to

learn how to do it (20 CFR §
404.1560(b)(1)). The vocational expert,
after attesting to his familiarity with the
record and presence during testimony,
summarized the degree of skill and
exertional demands of claimant's past work
as follows:

Inspector-(529.687-026)-unskilled work
-light, both as described by the claimant,
and as generally performed per the
Dictionary of Occupational Titles. The
claimant stated that while performing this
position, he both stood and sat and did not
lift substantial weight.

This position constitutes past relevant
work: the claimant performed this job
within the last 15 years (testimony;
Exhibits 7D and 3E ); the claimant's
earnings constituted substantial gainful
activity (Exhibit 7D; 3E and 20 C.P.R.§§
404.1572,404.1574,416.972, and 416.974);
and because the claimant worked in this
light, unskilled position for approximately
one year, the work lasted long enough for
the claimant to learn how to perform it.
Although not necessary to a step-four
determination, the vocational expert was
instructed to assume a hypothetical
individual who possessed a residual
functional capacity as previously
determined and outlined in Finding No. 5.
When asked whether such a hypothetical
individual could perform the claimant's
past work, the vocational expert responded
in the affirmative. Thus, in the opinion
of the vocational expert, a person with the
claimant's residual functional capacity is
able to work as an inspector.

Docket No. 5, Tr. 19.

## III.  STANDARD OF REVIEW

This Court's role in review of the ALJ's decision requires a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole. See 42 U.S.C. § 405(g); <u>Finch v. Astrue</u>, 547 F.3d 933, 935 (8th Cir. 2008).  Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question.  <u>Juszczyk v. Astrue</u>, 542 F.3d 626, 631 (8th Cir. 2008) (citing <u>Kirby v. Astrue</u>, 500 F.3d 705, 707 (8th Cir. 2007)).  This Court must consider both evidence that supports and detracts from the ALJ's decision.  <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006) (citing <u>Johnson v. Chater</u>, 87 F.3d 1015, 1017 (8th Cir. 1996)).  In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence on the record as a whole supports the ALJ's decision.  <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 589 (8th Cir. 2004).  The ALJ's decision shall be reversed only if it is outside the reasonable "zone of choice."  <u>Hacker v. Barnhart</u>, 459 F.3d 934, 936 (8th Cir.

2006) (citing <u>Culbertson v. Shalala</u>, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based on legal error. <u>Lauer v. Apfel</u>, 245 F.3d 700, 702 (8th Cir. 2001). If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse his/her decision. <u>Neal v. Barnhart</u>, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

**IV. ISSUES**

In his brief, Mr. Soria argues that ALJ erred in giving significant weight to older medical opinions. Mr. Soria also argues that the ALJ erred in finding that Mr. Soria's depression was not a significant impairment. Finally, Mr. Soria challenges the ALJ's credibility analysis.

**V. ANALYSIS**

In order for a plaintiff to qualify for disability benefits, they must demonstrate they have a disability as defined in the Social Security Act [hereinafter the Act]. The Act defines a disability as an:

> inability to engage in any substantial
> gainful activity by reason of any medically
> determinable physical or mental impairment
> which can be expected to result in death or

which has lasted or can be expected to last
for a continuous period of not less than 12
months . . . .

42 U.S.C. § 423(d)(1)(A).

## A. Credibility

The first argument the Court will address is about the
Plaintiff's credibility and the ALJ's credibility
determination. Mr. Soria argues:

> [f]irst and foremost, the ALJ failed to
> properly evaluate the medical evidence. As
> noted above, the ALJ gave "significant
> weight" to medical opinions that were not
> even relevant to Mr. Soria's claim... The
> ALJ essentially ignored the opinions of Dr.
> John E. Cook, the pain specialist, who
> diagnosed Mr. Soria with lumbar
> radiculopathy with bilateral symptomatology
> and lumbar facet syndrome secondary to
> degenerative joint disease as well as
> possible epidural adhesions. According to
> Dr. Cook, Mr. Soria obviously had radicular
> pain consistent with degenerative disk
> disease and obvious nerve root compression
> with symptoms consistent with
> radiculopathy. (AR 501) The ALJ's view of
> the medical evidence during the relevant
> time frame is not supported by substantial
> evidence. Moreover, the ALJ's decision
> fails to recognize the subjective nature of
> pain, particularly back pain... The ALJ
> overlooked or ignored evidence that, after
> Mr. Soria had been fired by Tyson Foods,
> Tyson was not covering his medical expenses
> and the claimant did not have any way to
> pay for medical treatment. (AR 464)
> Further, Dr. Grant noted a history of

> debilitating back pain.  Mr. Soria had seen
> multiple      orthopedics      for      further
> opinions... [4]

Docket No. 7, p. 19-21.  Mr. Soria goes on to address several

of the specific issues broached in the ALJ's ruling.

The standard regarding credibility findings is well

settled.  "In order to assess a claimant's subjective

complaints, the ALJ must make a credibility determination by

considering the claimant's daily activities; duration,

frequency, and intensity of the pain; precipitating and

aggravating factors; dosage, effectiveness and side effects of

medication; and functional restrictions." Mouser v. Astrue,

545 F.3d 634, 638 (8th Cir. 2008) citing Polaski v. Heckler,

739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ may not discount

subjective complaints solely because they are not supported by

objective medical evidence.  An ALJ must have sufficient

justification for doubting a claimant's credibility.  See

Wildman v. Astrue, 596 F.3d 959, 968 (8th Cir. 2010) (quoting

Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007)).

However, "[a] disability claimant's subjective complaints of

pain may be discounted if inconsistencies in the record as a

---

[4]  Epidural adhesions refer to scar tissue formations.

17

whole bring those complaints into question." <u>Gonzales v.</u>
<u>Barnhart</u>, 465 F.3d 890, 895 (8th Cir. 2006).

As stated above, the ALJ may only discount the
plaintiff's complaints if they are inconsistent with the
record as a whole. The Defendant argues that:

> [i]n evaluating plaintiff's credibility,
> the ALJ considered the inconsistencies
> between plaintiff's allegations and the
> objective evidence... [A]s the ALJ also
> noted, the examinations consistently
> revealed intact sensation, normal strength,
> and normal reflexes (Tr. 15, 384, 499-500).
> Diagnostic testing showed a solid, intact
> spinal fusion (Tr. 387, 414)... The ALJ
> also properly considered plaintiff's
> "spotty treatment" since his alleged onset
> date (Tr. 15)... The record does not show
> that plaintiff followed Dr. Fuller's
> recommendation of physical therapy (Tr. 15,
> 385)... Because plaintiff did not follow
> through with physical therapy, and his
> doctors changed his medication and other
> treatment "only slightly," the ALJ
> concluded that plaintiff's pain was stable
> and controlled (Tr. 16). See <u>Brown v.</u>
> <u>Astrue</u>, 611 F.3d 941, 955 (8th Cir. 2010)
> (quoting <u>Brace v. Astrue</u>, 578 F.3d 882, 885
> (8th Cir. 2009)) ("If an impairment can be
> controlled by treatment or medication, it
> cannot be considered disabling.").

Docket No. 9, p. 10-12. The Defendant also relies on select
medical evidence, stating:

> [i]n addition, plaintiff's February 2011
> Functional Capacity Evaluation ("FCE")

> showed that plaintiff reported "unreliable
> pain ratings" (Tr. 483). An earlier FCE in
> December 2008 was also considered invalid
> due to "symptom magnification" (Tr. 392).
> As the ALJ noted, plaintiff's "symptom
> exaggeration further detract[s] from his
> credibility" (Tr. 16).

Docket No. 9, 12-13.

Regarding his ability to work, Mr. Soria testified during the hearing that he has "a lot of pain, sensations with pain going down my legs through the back." Docket No. 5, Tr. 49. Mr. Soria also stated that he "feel[s] a lot of dizziness, kind of like drunkenness." Docket No. 5, Tr. 49. He has problems concentrating on his work. Id. Mr. Soria also testified that he does not feel that medicine helps his pain. Docket No. 5. Tr. 51. He stated that even spinal shots do not alleviate his back pain. Docket No. 5, Tr. 51. The Court is persuaded that substantial evidence supports Mr. Soria's claims, for a number of reasons.

First, both the ALJ and the Defendant rely on the fact that Mr. Soria does some extremely limited work (such as letting out the dog or driving short distances) to support the ALJ's conclusion that Mr. Soria can return to his past relevant work. However, courts have repeatedly stated that

the "limited ability to complete light housework and short errands does not mean [a claimant] has 'the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" Tilley v. Astrue, 580 F.3d 675, 682 (8th Cir. 2009) citing McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc). Mr. Soria testified that he cannot do much around the house and that his wife and children do most of the housework. Docket No. 5, Tr. 51. The ALJ's decision to discount Mr. Soria's complaints because of his ability to do housework is not supported by substantial evidence. Indeed, Mr. Soria testified that he is unable to do housework. The ALJ extrapolates Mr. Soria's alleged ability to do work from very weak inferences in Mr. Soria's testimony. In the ALJ's opinion Mr. Soria's testimony that he can only drive short distances because of back pain, becomes an ALJ conclusion that Mr. Soria does housework by driving his wife to work. Similarly, Mr. Soria's testimony that he is depressed, in pain, and forced to stay home during the day, becomes an ALJ conclusion that Mr. Soria is at home taking care of his (school aged) children every day.

The ALJ also relied on the fact that Mr. Soria applied for and received unemployment benefits to determine that Mr. Soria's testimony was not credible. It is true that in some circumstances, receiving unemployment benefits can be construed against a claimant. Courts have stated:

> "[a]pplying for unemployment benefits may be some evidence, though not conclusive, to negate a claim of disability." Johnson, 108 F.3d at 180-81. See also Cox v. Apfel, 160 F.3d 1203, 1208 (8th Cir. 1998) (stating "the acceptance of unemployment benefits, which entails an assertion of the ability to work, is facially inconsistent with a claim of disability," but noting the ALJ cannot base an adverse credibility finding on this fact alone)... Social Security Ruling 00-01c, 2000 WL 38896 (Jan. 7, 2000), and Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 119 S.Ct. 1597, 143 L. Ed. 2d 966 (1999), [discuss] the intersection of claims under the Social Security Act and the Americans with Disabilities Act. In Cleveland, the Supreme Court held that claims under the Social Security Act and the Americans with Disabilities Act do not conflict to the point where courts should apply a special negative presumption that precludes relief under the other Act. Cleveland, 526 U.S. at 802-03, 119 S. Ct. 1597. In other words, it is not entirely inconsistent for a person to assert "total disability" under the Social Security Act while asserting he or she could "perform the essential functions of the job" under the ADA because the Acts utilize different standards. Id. at 807, 119 S. Ct. 1597.

> For the same reasons, the Memo states,
> "[I]t is SSA's position that individuals
> need not choose between applying for
> unemployment insurance and Social Security
> disability benefits." Doc. No. 13-1 at 3.
> The Memo reiterates that an application for
> unemployment benefits is evidence that the
> ALJ must consider together with all of the
> other evidence and mentions that the
> underlying circumstances are often more
> relevant than the mere application for and
> receipt of benefits.

Lopez v. Colvin, 959 F. Supp. 2d 1160, 1174 (N.D. Iowa 2013).

In this case, the ALJ seems to rely heavily on the fact that Mr. Soria received unemployment benefits in determining that he did not testify credibly about his back pain. However, the record makes clear that Mr. Soria has four children to provide for. It is undisputed that he worked his entire life, without interruption, until he hurt his back (while at work). It makes sense that he would apply for unemployment when his (light work) position was eliminated, especially if his employer made the suggestion to do so. Additionally, as stated in the Plaintiff's brief, Mr. Soria's earning history entitles him to substantial credibility when claiming disability. See Nunn v. Heckler, 732 F.2d 645, 648 (8th Cir.1984); Jimmerson v. Astrue, 717 F. Supp. 2d 840, 862 (S.D. Iowa 2010). Mr. Soria is not the profile of a man who

is out to claim benefits for which he is not entitled. See
Mussman v. Apfel, 17 F. Supp. 2d 885, 891 (S.D. Iowa 1998);(a
claimant with a good work record is entitled to substantial
credibility when claiming an inability to work because of a
disability). Mr. Soria has a good work history. He has a
family to provide for. He was injured on the job; and it is
undisputed that his injury (which required surgery) is real,
even if both the Defendant and the ALJ now claim he is
exaggerating his pain. Based on those facts, the ALJ's
decision to rely on Mr. Soria's application to receive
unemployment benefits was an error and is not supported by
substantial evidence in the record. In fact, Mr. Soria is
entitled to some assumption of credibility based on his work
history.

Next, the Plaintiff argues that Mr. Soria's testimony is
supported by the third party reports contained in the record.
Mrs. Maria Soria, Mr. Soria's wife, testified that his back
bothers him a lot. Docket No. 5, Tr. 65. She further
testified that he is always in pain, especially when sitting.
Id. She also testified that Mr. Soria cannot do housework and
that she and the children do all the work. Docket No. 5, Tr.

66.  Mrs. Soria testified that Mr. Soria can not bend and has a hard time sleeping through the night.  Docket No. 5, Tr. 66-67.  Mrs. Soria's testimony is supported by the statements made by the claims representative.  See Docket No. 5, Tr. 249.  The 8th Circuit Court of Appeals has stated, "statements of lay persons regarding a claimant's condition must be considered when an ALJ evaluates a claimant's subjective complaints of pain.  "Willcockson v. Astrue, 540 F.3d 878, 880-81 (8th Cir. 2008).  That Court went on to say, "witnesses such as the family members who gave statements here often may be the only ones who witness a claimant's difficulties; though the ALJ is of course not required to accept all lay testimony, we think that it is almost certainly error simply to ignore it altogether."  Willcockson, 540 F.3d at 881.  In this case, even though the ALJ referenced the supporting lay opinions, he ignored them without sufficient justification.  The testimony seems remarkably consistent that Mr. Soria is unable to do much in the way of work and his activities have been substantially restricted by his back pain.  The ALJ's decision to discredit Mrs. Soria's testimony is not supported by substantial evidence.

Finally, as will be discussed more fully in the following sections, Mr. Soria's testimony is supported by the medical evidence in this case. Accordingly, substantial evidence does not support the ALJ's decision to give little weight to Mr. Soria's testimony regarding his inability to work. In fact, Mr. Soria's statements regarding his disability are substantially supported by the record in this case, including the medical records of Dr. Jonahthan Fuller, Dr. Roy Grant and Dr. John Cook. The ALJ's determination was not supported by substantial evidence and was an error. Because Mr. Soria testified credibly about his pain, and that testimony was supported by the medical evidence, the limitations outlined by Mr. Soria should have been incorporated into the question posed to the vocational expert.

**B. Medical Evidence**

The Plaintiff also argues that ALJ failed to give credit to certain medical evidence. Specifically, the Plaintiff argues:

> [t]he ALJ gave "significant weight" to several medical opinions from outside the relevant time period. As explained below, the opinions reflected the fact that Mr. Soria was, at that time, capable of working in competitive employment... The ALJ gave "significant weight" to the opinions of Dr. Jonathan Fuller, citing Exhibit 4F, pages

8-9, 11, and 35. (AR 18) These opinions
are dated December 2007, December 2008,
January 2009, and March 2009. (See AR 389,
390, 392, 417) Similarly, the ALJ gave
"significant weight" to the results of a
functional capacity evaluation from March
2009. (AR 18; see AR 377-80) At the time
that these opinions were issued, Mr. Soria
worked full-time. Mr. Soria earned almost
$28,000 in 2008 and almost $18,000 in 2009.
He stopped working and alleged disability
beginning September 28, 2009. (AR 10, 12)
These medical opinions, then, date from a
time period where Mr. Soria was working
full-time and made substantial gainful
activity. See 20 C.F.R. §404.1574(b)...
The medical record reflects Mr. Soria's
condition deteriorated after 2009. Dr. Roy
Grant saw Mr. Soria on October 19, 2009.
Mr. Soria had been fired by Tyson. As he
was no longer employed with Tyson, Tyson
was not covering his medical expenses.

Docket No. 7, p. 12-13. The Plaintiff goes on to cite the

specific instances of Mr. Soria complaining of increased

difficulties after the summer of 2009. See Docket No. 5, Tr.

462, 475, 477, 500-01, showing that Mr. Soria sought

increasing medication for his back pain from 2009-2011,

including epidural steroid infections.

As has been repeatedly stated:

[t]he opinion of a treating physician:
should not ordinarily be disregarded and is
entitled to substantial weight. A treating
physician's opinion regarding an
applicant's impairment will be granted
controlling weight, provided the opinion is
well-supported by medically acceptable
clinical and laboratory diagnostic

26

techniques and is not inconsistent with the
other substantial evidence in the record.

Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). In this
case, the ALJ relied on the earlier medical reports, including
those from treating sources, to determine that Mr. Soria had
the residual capacity to return to his past relevant work and
was not testifying credibly about his pain and his ability to
work. However, the medical evidence cited by the Plaintiff
makes clear that Mr. Soria's condition has been deteriorating
over time. Accordingly, it makes sense that Mr. Soria's
earlier medical reports did not contain as much evidence of
disability as the later medical reports. The ALJ's decision
to give significant weight to the earlier medical records at
the expense of the later records is not supported by
substantial evidence and was an error.

## C. Depression - Severe Impairment

Next, the Court will consider the Plaintiff's argument
regarding Mr. Soria's depression. As was discussed above, the
ALJ determined that Mr. Soria's depression was not severe.
The Plaintiff argues that this was an error, and more
importantly, based on additional evidence, it was an error for
the Appeals Council to fail to reconsider the issue. As this
Court has previously stated, the Appeals Council must consider

additional evidence if it is new, material, and relates to a time period before the ALJ's decision. 20 C.F.R. § 404.970(b); see <u>Johnson v. Chater</u>, 87 F.3d 1015, 1018 (8th Cir. 1996). SSA's Hearings and Appeals Law and Litigation Manual (HALLEX) Section I-4-2-30 provides:

> The claimant or another SSA component may submit additional materials to the [Appeals Council] at any time. The materials may or may not be part of a subsequent claim that has been adjudicated. If the claimant files a subsequent application after commencing a civil action on a prior claim, the adjudicating component . . . will limit its consideration to the period, if any, following the period undergoing judicial review. . . . If the adjudicating component makes a favorable determination or decision on the subsequent application, it will request the effectuating component to forward the case to [the Office of Appellate Operations] after effectuation to determine the impact, if any, of the favorable determination or decision on the pending court case.

See HALLEX, available at:
  http://www.ssa.gov/OP_Home/hallex/I-04/I-4-2-30.html (last visited March 24, 2014).

When the Plaintiff appealed the ALJ's ruling, he included additional evidence from Nurse Practitioner Sharon Arndt-Nelson concerning his depression. See Docket No. 5, Tr. 493-523. The Appeals Council concluded, without explanation that "this information does not provide a basis

for changing the [ALJ's] decision." Docket No. 5, Tr. 2.[5]
This was an error. The regulations provide that the Appeals
Council must evaluate the entire record, including any new
and material evidence submitted that relates to the period
before the date of the ALJ's decision. <u>Lamp v. Astrue</u>, 531
F.3d 629, 632 (8th Cir. 2008); <u>Cunningham v. Apfel</u>, 222 F.3d
496, 500 (8th Cir. 2000); see 20 C.F.R.§ 404.970(b). The
newly submitted evidence thus becomes part of the
"administrative record," even though the evidence was not
originally included in the ALJ's record. See <u>Nelson v.
Sullivan</u>, 966 F.2d 363, 366 (8th Cir. 1992). In this case,
it is clear that the ALJ's analysis would have been more
accurate with this information. It is likely that had the
ALJ had the opportunity to consider the additional evidence,
in light of the other evidence discussed above and below,
that the ALJ's would have considered Mr. Soria's depression
a severe impairment. There is a distinction between
acknowledging new evidence, and considering it. In this case
the appeals council acknowledged the evidence, but failed to

---

[5] The Defendant acknowledges Mr. Soria's new depression
evidence, but argues that most of the mental health treatment
occurred after the ALJ's decision, so under the rules, Mr.
Soria should file a new disability application rather than
continue to pursue this one. Docket No. 9, p. 7.

consider it in light of the entire record. This was an error.

**D. Hypothetical**

At the hearing, the ALJ questioned the vocation expert about Mr. Soria's job prospects. The vocational expert testified that using the State Agency's assessment of Mr. Soria's condition, it is likely that Mr. Soria would be able to work as an inspector. Docket No. 5, Tr. 74. Based on the state's assessment, the vocational expert also stated that Mr. Soria would be able to do a wide range of light work. Docket No. 5, Tr. 74. The ALJ relied on those statements to determine that Mr. Soria could return to his past relevant work.

As has been repeatedly stated, "[a] vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." Buckner v. Astrue, 646 F.3d 549, 560–61 (8th Cir. 2011). "[T]he hypothetical need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the concrete

consequences of those impairments." Id. (quoting Hulsey v. Astrue, 622 F.3d 917, 922 (8th Cir. 2010)).

Based on the forgoing analysis regarding credibility and medical evidence, the Court is persuaded that the ALJ failed to properly articulate Mr. Soria's limitations in the hypothetical question(s) to the vocational expert. Specifically, the ALJ failed to include limitations as set out in Mr. Soria's credible testimony, the third party reports, and the medical evidence from the period after 2009. The vocational expert testified that when he considered all the problems Mr. Soria testified to, Mr. Soria would not be able to find jobs on a full time basis. Docket No. 5, Tr. 72-73, 77. Because the ALJ failed to give appropriate weight to Mr. Soria's credible testimony, the ALJ's residual functional capacity evaluation is flawed as was the hypothetical answer the ALJ relied on. Accordingly, the ALJ's determination that Mr. Soria could return to past relevant work is not supported by substantial evidence in the record.

Finally, the Court notes the ALJ's past relevant work analysis is flawed above and beyond those issues already discussed. The ALJ stated that Mr. Soria was able to return to past relevant work as an inspector. However, the record

makes clear that Mr. Soria only worked as an inspector while assigned to special light duty after his back surgery. Mr. Soria's actual position at Tyson, prior to his back injury, was as a line worker, a position which required him to stand, carry buckets and lift up to 80 pounds. Docket No. 5, Tr. 57. That past position as a line worker is extremely different from inspection work. If the ALJ had considered Mr. Soria's actual previous employment as a line worker, as opposed to his temporary light work position, there is little doubt that the ALJ would have been forced to recognize Mr. Soria could not return his past employment. However, the ALJ casually dismissed the fact that Mr. Soria's real past position was as a line worker, a position he is no longer capable of doing. Even if not an error, this is wrong.

## VI.   CONCLUSION

It is clear the ALJ erred in the credibility, medical evidence and RFC sections discussed above. The question thus becomes whether this Court should remand for further consideration or solely for the purpose of awarding benefits.

This Court has the authority to reverse a decision of the Commissioner, "with or without remanding the cause for rehearing," but the Eighth Circuit has held that a remand for

award of benefits is appropriate only where "the record 'overwhelmingly supports'" a finding of disability. 42 U.S.C. 405(g); <u>Buckner v. Apfel</u>, 213 F.3d 1006, 1011 (8th Cir. 2000) (citing <u>Thompson v. Sullivan</u>, 957 F.2d 611, 614 (8th Cir. 1992).

The Court has considered the entire record, the parties' briefs, and the arguments presented at hearing. When the medical evidence are considered along with Mr. Soria's credible testimony, this Court is persuaded that the overwhelming evidence supports a finding of disability.

**Therefore, the decision of the ALJ is reversed and remanded solely for the calculation of benefits from Plaintiff's claimed onset of disability.**

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action. Thus, unless this decision is appealed, if plaintiff's attorney wishes to apply for EAJA fees, it must be done within thirty (30) days of the entry of the final judgment in this case.

**IT IS SO ORDERED** this 24th day of March, 2014.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa